

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-2004

# Boyd v. Rockwood Area Sch

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4124

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Boyd v. Rockwood Area Sch" (2004). *2004 Decisions.* Paper 469.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/469

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4124

CLAUDIA L. BOYD; EDGAR W. GNAGEY;
CORDELLA B. GREEN; WILLIAM S. HAJEL;
DONNA L. JOHNSON; SANDRA KUSCH;
LARRY LAVIGNE; JOYCE D. STERN;
WILLIAM H. WELSH,

Appellants

v.

ROCKWOOD AREA SCHOOL DISTRICT;
ANDREAS DEMIDONT; CLAIR E. LEWIS

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 02-cv-00233)
District Judge: Hon. Joy F. Conti

Argued May 11, 2004

BEFORE: NYGAARD, McKEE and WEIS, <u>Circuit Judges</u>.

(Filed July 22, 2004)

Kathryn L. Simpson, Esq. (Argued)
P. Daniel Altland, Esq.
Ronald L. Finck, Esq.

Ambrose W. Heinz, Esq.
Mette, Evans & Woodside
3401 North Front Street
P.O. Box 5950
Harrisburg, PA 17110
Counsel for Appellant

Daniel W. Rullo, Esq. (Argued)
Barbera, Clapper, Beener, Rullo & Melvin
146 West Main Street
P.O. Box 775
Somerset, PA 15501
Counsel for Appellees Rockwood Area School District and Andreas Demidont

William K. Eckel, Esq. (Argued)
Central Park Law Building
Suite 210
132 Gazebo Park
Johnstown, PA 15901
Counsel for Appellee Clair E. Lewis

---

OPINION

---

McKEE, Circuit Judge.

Retired employees of the Rockwood Area School District sued the Rockwood School District, the District Superintendent and the President of the district teachers' union after the school district changed plaintiffs' health care coverage pursuant to a new collective bargaining agreement it had negotiated with the union. The plaintiffs sought recovery under 42 U.S.C. § 1983 arguing that the change violated their Fifth Amendment right to procedural due process. They also asserted several causes of action under state

2

law. The district court dismissed the § 1983 claim pursuant to Fed. R. Civ. P. 12(b)(6) and declined to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3).  We will affirm.  **I. BACKGROUND**

When reviewing a district court's Rule 12(b)(6) dismissal, we must "accept all factual allegations in the complaint and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993).  We will therefore set forth the facts and relevant inferences as derived from plaintiffs' complaint.

When plaintiffs retired they were covered by a collective bargaining agreement between the Rockwood Area School District ("RASD") and the Rockwood Educators' Association ("REA"), the district teachers' union.[1]  Article V, paragraph F of this agreement stated:

> In the event an employee after 30 years of service in teaching permanently retires from teaching after date of this contract and prior to such retiring employee's attaining the age of eligibility for Medicare, the Employer agrees to continue to pay the premiums for such employees' Blue Cross, Blue Shield and major medical or equivalent insurance coverage benefits under paragraph "A" of this Article V above until such employee attains the age of eligibility for Medicare.

Complaint ¶ 19.

---

[1] Seven of the plaintiffs were teachers and members of the REA.  The remaining two plaintiffs were employed as an administrator and a secretary and allege that they were entitled to the same benefits as the teachers pursuant to their contracts with the school district.

Article V, paragraph A provided that RASD would "provide and pay the premium in full for Plan 'U' Blue Cross, Blue Shield and Major Medical . . . or [] equivalent insurance coverage with some other responsible insurance carrier, for each individual employee and the dependent members of his family." Complaint ¶ 18. Defendants Andreas Demidont, the superintendent of RASD, and Clair E. Lewis, the president of the REA, were able to encourage plaintiffs to take early retirement largely because of RASD's obligation to maintain plaintiffs' level of health care insurance coverage. Plaintiffs' desire to maintain their then current level of coverage was pivotal in their decision to take early retirement.

However, a collective bargaining agreement that the REA negotiated with RASD following plaintiffs' retirement changed the employees' health insurance from Plan U Blue Cross to Select Blue Plan Option 1. That change also applied to the plaintiff retirees' coverage, and plaintiffs protested arguing that changing their health insurance to Select Blue Option 1 violated the agreement to maintain the level of benefits they enjoyed under Plan U Blue Cross.

RASD held a hearing in response to plaintiffs' complaints about the change in coverage but concluded that the shift did not violate any agreement with the plaintiffs. Thereafter, plaintiffs filed the instant 1983 action arguing that the change in health care benefits in violation of their understanding at retirement improperly deprived them of a protected property interest, and that RASD's post-deprivation hearing did not cure the

4

constitutional deprivation..[2]

The defendants moved to dismiss the 1983 claim pursuant to Fed. R. Civ. P. 12(b)(6), and they moved to dismiss the state law claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[3] The district court concluded that plaintiffs failed to state a cause of action under § 1983. Accordingly, the court dismissed that claim pursuant to Rule 12(b)(6), and declined to exercise supplemental jurisdiction over the remaining state law claims. This appeal followed.

## II. DISCUSSION

We review the district court's dismissal under Rule 12(b)(6) to determine if any relief could be granted under the facts plaintiffs alleged. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993). In order to prevail on their Fifth Amendment procedural due process claim, plaintiffs have to allege that they were deprived of a constitutionally protected interest without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir. 1989).

The plaintiffs argue that they were involuntarily deprived of their protected

---

[2] As noted above, plaintiffs also asserted pendent state law claims for breach of contract and equitable estoppel against RASD, and claims of intentional interference with contract, fraudulent misrepresentation and civil conspiracy against defendants Lewis and Demidont.

[3] Defendants Demidont and RASD also argued that the claims against them should be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party, the REA. The district court did not reach this argument because it based its decision to dismiss the claims before it on other grounds, and we need not address this argument because we affirm its dismissal on those grounds.

property right to continue employment with RASD because RASD made material misrepresentations regarding future health care coverage and plaintiffs relied upon those representations in deciding to take early retirement. Alternatively, plaintiffs argue that they were deprived of their property right to continued health care benefits that arose from the collective bargaining agreement in effect when they took early retirement and their employer's commitment to continue those benefits.

The district court held that plaintiffs did not allege a property interest protected by the Due Process Clause, and that any interest plaintiffs may have had was adequately protected by the hearing the district held after the change in coverage.

## A. The Claimed Property Interest.

Constitutionally protected property interests arise only from independent sources such as state law. However, "federal constitutional law determines whether [an interest under state law] rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Memphis Light Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (internal quotation marks and citation omitted). The plaintiffs' purported property interest arises from two different sources: (1) their interest in continued employment, and (2) their agreement with RASD to retire early in return for a continuing level of health care coverage.

The Supreme Court has held that state law can create a property interest in tenured school teachers, administrators, or nonprofessional school employees. 24 P.S. §§ 5-514 et

6

seq., 11-1101 et seq.; *cf. Bd. of Regents v. Roth*, 408 U.S. 564, 566 (1972) (noting that Wisconsin law created a protected property interest in tenured teaching positions). Plaintiffs argue that their interest in continued employment with RASD rises to the level of a protected property interest because their agreement to take early retirement was contingent on their health benefits remaining the same or increasing. They maintain that the subsequent collective bargaining agreement changed their coverage in violation of that agreement and that the resulting deprivation is sufficiently severe to rise to the level of a protected property interest.

We have previously stated that retirement decisions are presumed to be voluntary. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). Accordingly, we assume that the plaintiffs' decision to take early retirement was voluntary. However, that presumption can be overcome by evidence of coercion or misrepresentation of facts material to the retirees' decision.. *Id.* at 228. The plaintiffs argue that their retirement was involuntarily because RASD misrepresented a material fact to them.

We apply an objective test to determine if a retirement decision is voluntary. *Covington v. Dep't of Health and Human Services*, 750 F.2d 937, 942 (Fed. Cir. 1984); *see also*, *Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1574-75 (Fed. Cir. 1983). Under that test, we do not inquire into the subjective perceptions of the employee or the subjective intentions of the employer. *Covington*, 750 F.2d at 942. Rather, the plaintiff need only prove that a reasonable person would have been misled by the agency's

7

statements. *Id.* (quoting *Scharf*, 710 F.2d at 1575).

The plaintiffs' constitutional challenge rests upon provisions in a collective bargaining agreement, and the only reasonable conclusion here is that plaintiffs should have known that their health care benefits as retirees were subject to change pursuant to subsequent collective bargaining agreements between RASD and the REA. The agreement they rely upon for the source of a protected property interest in continued inclusion in Plan U specifically stated that different health care insurance could be substituted as long as it was equivalent to the Plan U Blue Cross Blue Shield coverage. Thus, they were clearly aware of the possibility of different, though equivalent, health care coverage in the future. Given that knowledge, their decision to take early retirement is hardly rendered involuntary because a subsequent collective bargaining agreement afforded different coverage.[4]

Not every contract results in a protected property interest. *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir. 1989). Rather, a contract creates a protected property interest

---

[4] The plaintiffs cite to both *Leheny* and *Hargray v. City of Hallandale*, 57 F.3d 1560 (11th Cir. 1995), to establish that reasonable reliance on a misrepresentation could amount to an involuntary deprivation of their property interest in continued employment. However, neither case furthers our inquiry. In *Leheny*, we affirmed the district court's finding that plaintiffs were not forced to retire as a matter of law because the plaintiffs had decided to retire four months before the alleged misrepresentation occurred. 183 F.3d at 228. In *Hargray*, the plaintiff alleged that his decision to retire was rendered involuntary by his employer's fraudulent threat to bring charges against him. However, the court held that the employing municipality had probable cause to bring criminal charges against him. Thus, there was no fraud and the city's actions did not make the plaintiff's decision to retire involuntary. 57 F.3d at 1569-71.

subject to the limitations of the Due Process Clause only if it confers a status of permanence or extreme dependence, or if it provides that the contract can only be terminated for cause. *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991). The collective bargaining agreement here does neither. The situation here is not analogous to the circumstances in *Goldberg v. Kelly*, 397 U.S. 254, 261-62 (1970). The welfare benefits conferred there resulted in the recipient's "extreme dependence" for day-to-day survival. In fact, as defendants note, "[t]here is no claim . . . that any [plaintiffs] have paid money out of pocket for medical care or been denied insurance coverage for medical treatment as a result of not having Plan 'U' health insurance." Appellees' Br. at 23. Moreover, as appellees also note without contradiction, "[p]laintiffs can still obtain Plan 'U' health insurance through the School District health benefit plan by paying the cost differential for such insurance." *Id.* Although we do not minimize the actual and psychological importance of health care benefits and related costs to retirees, we can not help but note that plaintiffs here are not alleging that their day-to-day survival has been threatened by the "reduction" in coverage under the new collective bargaining agreement. *See S&D Maintenance Co., Inc. v. Goldin*, 844 f.2d 962, 966 (2d Cir. 1988 (the claimed property interest must be "characterized by a quality of either extreme dependence" or "permanence . . . or sometimes both [to rise to the level of a constitutionally protected interest.").[5]

---

[5] The plaintiffs also argue that "Congress recognized the importance of sound retirement plans with it enacted the Employee Retirement Income Security Act [29 U.S.C.

## B. The process due given the property interest involved

Plaintiffs' challenge to the adequacy of the post-deprivation hearing RASD held is contingent on the significance of the property right involved. We have already explained that plaintiffs have not alleged a constitutionally protected property interest. Accordingly, the district court correctly held that plaintiffs were not entitled to procedural due process under the Fifth Amendment before their health plan was changed.[6] There may be an issue of whether the substituted benefits were "equivalent" to the benefits plaintiffs received under Plan U. However, absent more indicia of extreme dependence of permanence than exists here, the post deprivation hearing plaintiffs were afforded was more than adequate to protect plaintiffs' interests. *See Mathews v. Elridge*, 424 U.S. 319 335 (1976). As the district court correctly recognized, the question of whether the subsequent plan was "equivalent" to Plan U is a contract dispute that turns on issues of state contract law that do not implicate the Constitution.

The plaintiffs can pursue their state law claims, but not in federal court. Since the

---

§§ 1001 et seq.]" Br. at 21. The passage of ERISA certainly indicates that Congress thought that employees' receipt of retirement benefits was important enough to be federally regulated, but it does not necessarily follow that Congress intended to indicate that retirement benefits rose to the level of being a constitutionally protected property interest.

[6] In his individual brief on appeal, Lewis argues that he did not have the authority as either a RASD teacher or the president of the REA to provide the plaintiffs with a pre-deprivation hearing and can not be held liable for any due process violations that may have occurred as a result. We need not address this argument because we find that the plaintiffs did not have a due process right to a pre-deprivation hearing.

10

district court correctly dismissed the section 1983 claim, it was within its authority to remand the state law claims. 28 U.S.C. § 1367(c)(3).

## III. Conclusion.

For all of the above reasons, we will affirm the district court's order dismissing all claims against the defendants.